327 A.2d 358
COMMONWEALTH of Pennsylvania
v.
Robert Lee ROWE, Appellant.

Supreme Court of Pennsylvania.
Argued April 22, 1974.
Decided Oct. 16, 1974.

164

Roy H. Davis, Drexel Hill, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Richard A. Sprague, 1st Asst. Dist. Atty., David Richman, Asst. Dist. Atty., Chief, Appeals Division, Bonnie Leadbetter, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and NIX, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Prior to trial, appellant filed a timely motion to suppress oral and written statements obtained from him by the police.[1] After a hearing, his motion was denied and his statements were introduced over objection at trial. A jury found appellant guilty of murder in the first degree, conspiracy, and two counts of aggravated robbery. Post-trial motions were denied and sentence imposed. On this direct appeal[2] from his conviction of murder in the first degree[3] and sentence of life imprisonment, appellant contends that his statements were erroneously admitted at trial and that the evidence was insufficient to sustain the conviction. We disagree and affirm.

1. In his suppression motion appellant contended:
 "That the statement referred to was obtained from the Petitioner Robert Rowe as a result of coercion and unlawful inducement and after an excessive period of time and before any preliminary arraignment was had.
 "The statement and admission obtained were in violation of the constitutional rights of the Petitioner."
2. Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1974).
3. No appeal from the other convictions was taken.

At approximately 1:00 a. m. on December 23, 1972, three armed men entered a Philadelphia tavern, announced a robbery, and began to collect wallets from those present. A scuffle ensued when one patron resisted. One man was killed, others wounded, and a robber shot in the shoulder. The robbers fled, dragging their wounded member with them, and jumped into a nearby automobile. Even before its doors were fully closed, the automobile sped away.

When the robbery-murder was reported, the police began contacting local hospitals to ascertain if any patients with bullet wounds of the shoulder had been admitted. At about 4:00 a. m., the Philadelphia police learned that a wounded man was a patient in a Camden, New Jersey, hospital. They also learned that appellant was with him and that the two men had driven to Camden in an automobile whose description matched the getaway car.

Upon receiving this information, the Philadelphia police went to Camden and asked appellant if he would voluntarily accompany them to Philadelphia for questioning. Appellant was told he did not have to go, but nevertheless agreed. No further questions were there asked, and appellant drove his own car back to Philadelphia. He arrived at police headquarters at 6:50 or 6:55 a. m.

After appellant arrived, detectives who had been investigating the case concluded that appellant was a potential suspect and warned him of the possible charges. The day shift was then coming on duty, and appellant was offered food and left alone until 8:25 a. m. A detective who had just arrived was informed of the robbery-murder and interviewed appellant—the first Philadelphia police officer to do so. After appellant was advised of his *Miranda*[4] rights he immediately admitted his participation as driver of the getaway car, denied participation in the actual robbery, and volunteered the names of the other robbers.

4. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Appellant was unable to recall the exact street addresses óf the others, but agreed to point out their houses. He did so in the company of detectives and returned to police headquarters at about 10:30 or 11:00 a. m. He was again fed and left alone while the detectives tried to apprehend the other suspects.

Shortly after 3:00 p. m. that afternoon, appellant was again given his *Miranda* warnings. He gave a second statement which was recorded, transcribed, and read to him. This second statement, which appellant signed at 3:15 p. m., was virtually identical to the earlier one. Appellant was not arraigned until 8:00 p. m. that evening.

In *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972), this Court held that all evidence obtained during an unnecessary delay between arrest and arraignment must be excluded except for that evidence which has no reasonable relationship to that delay. Accord, *Commonwealth v. Cherry*, 457 Pa. 201, 321 A.2d 611 (1974); *Commonwealth v. Williams*, 455 Pa. 569, 319 A.2d 419 (1974); *Commonwealth v. Dixon*, 454 Pa. 444, 311 A.2d 613 (1973); *Commonwealth v. Wayman*, 454 Pa. 79, 309 A.2d 784 (1973); *Commonwealth v. Dutton*, 453 Pa. 547, 307 A.2d 238 (1973); *Commonwealth v. Tingle*, 451 Pa. 241, 301 A.2d 701 (1973); *Commonwealth v. Jones*, 449 Pa. 619, 294 A.2d 889 (1972).

Here, appellant asserts that the lapse of thirteen hours between his appearance at police headquarters and arraignment requires that all statements given during that period be suppressed. We cannot agree. For as this Court stated in *Commonwealth v. Tingle*, 451 Pa. 241, 245, 301 A.2d 701, 703 (1973):

> "*Futch* did not . . . establish a per se rule that all evidence obtained during an unnecessary delay be excluded. It is only upon the defendant's showing of prejudice from the delay, i. e., a nexus between the delay and the challenged evidence that he is entitled to relief."

168

In this case, the requisite nexus between appellant's challenged statements—his 8:30 a. m. oral statement and its 3:15 p. m. written repetition—and the period of delay is missing.

 Initially, as we noted in *Futch,* if unnecessary delay *follows* the securing of a confession, that evidence is not reasonably related to the subsequent delay. See, e. g., *United States v. Mitchell,* 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140 (1944); *Virgin Islands v. Gereau,* 502 F.2d 914 (3d Cir. 1974). For as the Supreme Court stated in *Mitchell,* "the illegality of [an accused's] detention does not retroactively change the circumstances under which he made the disclosures." 322 U.S. at 70, 64 S.Ct. at 898.

 Here, appellant's first statement, his oral one, was given less than two hours after his arrival at police headquarters. Appellant arrived shortly before seven in the morning. During the next one and one-half hours he was fed but not questioned; during this brief period the questioning detectives arrived at headquarters, learned of the incident, and were informed of appellant's presence and possible involvement. This initial delay, primarily an administrative one, cannot on this record be viewed as unnecessary. Compare *Commonwealth v. Williams,* 455 Pa. 569, 573, 319 A.2d 419, 421 (1974). Nor can it be said that appellant's freely-given statement immediately after questioning began was the product of delay. Cf. ALI Model Code of Pre-Arraignment Procedure § 130.2 (Tent.Draft No. 6, 1974).

In his first statement, appellant revealed all the relevant details of his participation in the robbery-murder. Appellant's 3:15 p. m. written statement, obtained shortly after he returned to police headquarters following his efforts at assisting the police apprehend the others, contained no new information. Appellant concedes as much.

We cannot say that this second, written statement is reasonably related to delay in arraignment. In *Commonwealth v. Cherry,* supra, *Commonwealth v. Williams,* supra, and *Commonwealth v. Tingle,* supra, denials of guilt or unsatisfactory answers were followed by additional delay and questioning after which guilt was confessed. We held in those cases that there had been unnecessary delay prior to the obtaining of the confessions and hence a nexus between confession and delay. Here, unlike *Cherry, Williams,* and *Tingle,* appellant merely reiterated what he stated earlier that day and before any unnecessary delay. In this case, therefore, there is no nexus between delay and appellant's 3:15 p. m. written confession since it was only a repetition of his earlier 8:30 a. m. incriminating oral statement.

Thus, although the total period of delay between appellant's appearance at police headquarters and his arraignment was thirteen hours, appellant was not prejudiced by the delay. In the particular circumstances of this case—an initial admission within two hours after appellant's arrival at police headquarters, a later, written repetition of the same statement at 3:15 p. m., and post-confession delay—suppression was properly refused.

Appellant also argues that his statements should have been suppressed because, it is asserted, they were coerced. He further contends that the signed statement introduced at trial was not his. The Commonwealth denied these allegations and introduced contrary evidence. Credibility and believability of witnesses were the questions for resolution. These issues properly were submitted respectively to the suppression court and the jury as factfinders. Confronted with conflicting evidence, both factfinders resolved these issues against appellant; their decisions, supported by the record, may not here be disturbed. See *Commonwealth v. Williams,* 450 Pa. 158, 162, 299 A.2d 643, 645 (1973); *Common-*

*wealth v. Karchella,* 449 Pa. 270, 273, 296 A.2d 732, 733 (1972) ; *Commonwealth v. Garvin,* 448 Pa. 258, 269, 293 A.2d 33, 39 (1972) ; *Commonwealth v. Chermansky,* 430 Pa. 170, 174, 242 A.2d 237, 240 (1968). There was no error in the admission of appellant's statements at trial.

Finally, appellant challenges the sufficiency of the evidence. At trial and in his properly-received statements, appellant admitted that he drove the getaway car; at trial he further admitted that he was paid for his services. Furthermore, in his statements appellant admitted that he and the others earlier that day had discussed "knocking off some place." [5] Viewing this record evidence and the reasonable inferences therefrom, as we must, in the light most favorable to the Commonwealth, *Commonwealth v. Lee,* 450 Pa. 152, 154, 299 A.2d 640, 641 (1973), it must be concluded that the jury could reasonably have found beyond a reasonable doubt that appellant was a coconspirator and active participant in a planned robbery which resulted in murder. The evidence, therefore, is sufficient to sustain the jury's verdict of murder in the first degree. *Commonwealth v. DeMoss,* 401 Pa. 395, 165 A.2d 14 (1960), cert. denied, 365 U.S. 822, 81 S.Ct. 708 (1961) ; see *Commonwealth v. Hill,* 457 Pa. 1, 319 A.2d 886 (1974) ; *Commonwealth v. Yuknavich,* 448 Pa. 502, 295 A.2d 290 (1972).

Judgment of sentence affirmed.

MANDERINO, J., took no part in the consideration or decision of this case.

EAGEN, J., concurs in the result.

---

5. In his written confession appellant stated:
"At about 9:00 or 10:00 o'clock last night we were at Larry's house and Thomas Hilliard and me were talking about knocking off some place. About 10:00 o'clock all four of us got into my car and we rode around. Then after awhile they told me to stop. We were down near the bar when we stopped. It was at 8th and Venango Street. I parked the car in a parking spot and the three of them got out of the car and went to the bar. . . . "